UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SALLYPORT GLOBAL SERVICES, LTD.,

Plaintiff,

v.

ARKEL INTERNATIONAL, LLC, in its own
right and as successor by merger to ARKEL
INTERNATIONAL, INC.,

Defendant.

Civil Action No. 14-cv-01927 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION**

This is a diversity action between two international companies accusing each other of various breaches of contract arising out of their business dealings overseas.[1] Specifically, the plaintiff, Sallyport Global Services, Ltd., which is a Bermuda company, has asserted in four claims that the defendant, Arkel International, LLC, breached a Joint Venture Agreement for a construction project in South Sudan, as well as breached agreements for services provided by the plaintiff in Iraq. *See generally* Compl., ECF No. 1; Jt. R. 16.3 Report ("JR") ¶ 1, ECF No. 18.[2] The defendant, in turn, has asserted four counterclaims based upon the Joint Venture Agreement. *See generally* Answer, ECF No. 13. Pending before the Court is the defendant's motion to transfer this case to the Middle District of Louisiana. *See* Def.'s Mot., ECF No. 14. For the reasons explained below, the motion is granted.

---

[1] The parties agree that the requirements for diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), are satisfied because the plaintiff is a foreign company organized under the laws of Bermuda, the defendant is a limited liability company organized under the laws of the State of Louisiana, and the amount in controversy exceeds $75,000 dollars. *See* Compl. ¶ 3; Def.'s Answer ¶ 3 ("[the defendant] admits that, upon information and belief, diversity of citizenship exists between [the defendant] and [the plaintiff] and the amount in controversy in this case exceeds $75,000 dollars").

[2] The parties timely filed their joint meet and confer statement on January 12, 2015, which proposes deadlines for inclusion in a scheduling order. JR ¶ 9. Since this case will be transferred, any scheduling order to control further proceedings will be subject to the discretion of the District Court for the Middle District of Louisiana.

1

I.   **BACKGROUND**

The plaintiff is "a company formed under the laws of Bermuda" that provides "mission critical security, housing and catering in hot spots across the world." Compl. ¶¶ 1, 5. The defendant is a limited liability company "organized under the laws of the State of Louisiana" that "undertakes construction projects around the world, particularly for government and militaries." *Id.* ¶ 2; Answer ¶¶ 2, 68; JR ¶ 1. In February 2008, the parties entered into the Joint Venture Agreement ("JV Agreement") for exclusive pursuit of business opportunities in Southern Sudan. JR at 1. As part of this joint venture, the parties leased property in Sudan for the purpose of improving the property for use as a residence and dining facility. *Id.*

Due to the inability of the parties to resolve a dispute over the proper allocation of indirect costs for the Sudanese property, the defendant exercised a "put mechanism" provided in the JV Agreement to sell its fifty percent interest in the joint venture to the plaintiff. Compl. ¶ 22. This "put mechanism" provided that "one party could make an offer to buy out the other party or to sell its interest to the other. The other party was then required to either accept the offer and sell its interests or the other party could elect to buy out the offering party by paying to it the amount proposed by the offering party." *Id.* ¶ 21. The plaintiff declined the defendant's offer and, instead, proposed to sell its 50% interest in the joint venture to the defendant for the same price. *Id.* ¶ 23. The plaintiff alleges that the defendant agreed to buy the plaintiff's joint venture interest at the specified price, *id.* ¶ 24, but subsequently reneged by proposing to buy the plaintiff's interest at a much lower price, *id.* ¶ 25. Alternatively, the defendant offered to sell its interest to the plaintiff at the same lower price. *Id.*

Following an effort at mediating this dispute in Atlanta, Georgia, JR ¶ 5, the plaintiff filed this lawsuit alleging that the defendant breached the JV Agreement by refusing both "to pay

2

[the plaintiff] monies due and owing under the [JV Agreement]," Compl. ¶¶ 32-33 (Count 1), and "to close on the exercise of the put in light of [the plaintiff's] acceptance of the put," *id.* ¶¶ 34-36 (Count II). The plaintiff also alleges two additional breaches of contract by the defendant in connection with other agreements unrelated to the JV Agreement for failing to "pay monies due for food services and security services provided by [the plaintiff] to [the defendant's] facilities in Iraq," *id.* ¶¶ 37, 38 (Count III), and to "pay monies due and owing to [the plaintiff] on the commission on total contract revenues received by [the defendant] on the LBG PowerPro Contract in Iraq," *id.* ¶¶ 39-40 (Count IV). As noted, the defendant has asserted four counter-claims against the plaintiff.

## II. LEGAL STANDARD

A case may be transferred to any district where venue is also proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 579 (2013) ("[Section] 1404(a) does not condition transfer on the initial forum's being 'wrong' . . . it permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation."). The Supreme Court has explained that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, "transfer in derogation of properly laid venue" in the District of Columbia "must . . . be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute." *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974). The movant bears the burden of

persuasion that transfer of an action is proper. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978); *Niagara Pres., Coalitaion, Inc. v. FERC*, 956 F. Supp. 2d 99, 102-103 (D.D.C. 2013); *Hooker v. NASA*, 961 F. Supp. 2d 295, 297 (D.D.C. 2013).

## III. DISCUSSION

The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action "might have been brought." 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co.*, 134 S. Ct. at 579. In diversity jurisdiction actions, such as the instant matter, venue is generally proper in any judicial district where (1) "any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) "any defendant is subject to the court's personal jurisdiction with respect to such action," if neither of the other prongs apply. 28 U.S.C. § 1391(b). The parties do not dispute that, under the first prong of the venue statute, this action could have been initially filed in the Middle District of Louisiana because the defendant is a resident of Louisiana. Def.'s Mem. in Supp. of Mot. ("Def.'s Mem.") ¶ 8, ECF No. 14-1.[3] The Court therefore turns to consideration of which forum, the District of Columbia or the Middle District of Louisiana, best serves the convenience of the parties and witnesses, and the interest of justice, as required by § 1404(a).[4]

---

[3] The defendant incorrectly cites as a support 28 U.S.C. § 1391(e)(1)(A), which is the subsection in the venue statute applicable only to "[a]ctions where defendant is officer or employee of the United States." Even if the defendant operates as a government contractor, this does not make this company an officer, employee or agency of the United States.

[4] The defendant disputes whether this Court may exercise personal jurisdiction over it and denies the plaintiff's allegation that the defendant "has maintained an office within the District and, as such, is subject to this court's personal jurisdiction." Compl. ¶ 4; Answer ¶ 4 ("Denied"). As support, the defendant's CEO states that "[the defendant] does not have an office in the District of Columbia," Decl. John J. Moore ¶ 4, ECF No. 14-2, despite the fact that the CEO also admits that the defendant "lists 'Washington D.C. Satellite Office' on its website in connection with its federal government contracting business," *id.* ¶ 5. Since this case will be transferred, the defendant's claim of lack of personal jurisdiction in this Court requires no further discussion.

In resolving motions to transfer venue under Section 1404(a), courts have not limited their consideration to the express statutory factors of "convenience of parties and witnesses," 28 U.S.C. § 1404(a)(1), but have also considered other private and public interest factors, which elucidate the concerns implicated by the phrase "in the interest of justice."  *See, e.g.*, *Stewart Org.*, 487 U.S. at 29; *Foote v. Chu*, 858 F. Supp. 2d 116, 120 (D.D.C. 2012); *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 176 (D.D.C. 2007); *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 15 (D.D.C. 1996).  The private interest factors are addressed first, followed by the public interest factors.

### A. Analysis of Private Interest Factors

Courts generally look to six private interest factors in evaluating transfer motions: 1) "the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant[];" 2) "the defendant[']s choice of forum;" 3) "whether the claim arose elsewhere;" 4) "the convenience of the parties;" 5) "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and 6) "the ease of access to sources of proof."  *Trout Unlimited*, 944 F. Supp at 16; *see also Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008) (citing *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007)).  While the first factor weighs slightly against transfer, the balance of the remaining private interest factors weighs in favor of transfer.  The Court will address each factor *seriatim*.

First, the plaintiff is correct that a plaintiff's choice of forum is typically entitled to deference, *see* Pl.'s Opp'n at 7 (collecting cases), ECF No. 17, however, such deference is minimized when the forum chosen is not the plaintiff's home forum.  *See Ctr. for Envtl. Sci., Accuracy & Reliability v. Nat'l Park Serv.*, No. 14-CV-1409 (BAH), 2014 WL 6968829, at *3

(D.D.C. Dec. 10, 2014) (affording plaintiff's choice of forum less deference where the plaintiff's home forum was the Eastern District of California); *Pac. Mar. Ass'n v. N.L.R.B.*, 905 F. Supp. 2d 55, 60 (D.D.C. 2012) (plaintiffs' chosen forum afforded less deference where the "plaintiff's choice of forum is not the plaintiff's home forum" quoting *Stockbridge—Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 47 (D.D.C. 2009) (internal quotation marks omitted)). The plaintiff concedes that neither party is a resident of the District of Columbia. Pl.'s Opp'n at 7 ("[the plaintiff] is not a resident of this District"). Accordingly, the plaintiff's choice of the District of Columbia to litigate this matter carries only minimal significance and weighs only slightly against transfer.[5]

Beyond the plaintiff's choice to litigate in this District, the remaining private interest factors either weigh in favor of transfer or are inherently neutral. Regarding the second factor, the plaintiff is correct that "a defendant's choice of forum 'is not ordinarily entitled to deference.'" Pl.'s Opp'n at 7 (quoting *Renchard v. Prince William Marine Sales, Inc.*, 28 F. Supp. 3d 1, 11 (D.D.C. 2014)). In this case, the defendant seeks transfer to the Middle District of Louisiana where the defendant resides. *See* Def.'s Mot. ¶ 8; Compl. ¶ 2. Just as the plaintiff's choice carries some weight against transfer, the defendant's choice carries some weight in favor of transfer.

The third factor regarding where the claims arose, weighs more significantly in favor of transfer, principally because the JV Agreement, which is the source of half of the plaintiff's

---

[5] The plaintiff cites two cases in support of its argument that its choice of forum is entitled to deference notwithstanding the fact that the District of Columbia is not a venue where the plaintiff has its home or even an office. *See* Pl.'s Opp'n at 7 (citing *Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) and *In re Vitamins Antitrust Litig.*, 263 F. Supp. 2d 67, 69 (D.D.C. 2003)). These cases are inapposite. In *Tuttle v. Jewell,* the Court stated expressly that the plaintiff's "choice of forum receives diminished deference because this jurisdiction is not his home forum," but nonetheless denied transfer due to other factors. 952 F. Supp. 2d at 208. Similarly, *In re Vitamins Antitrust Litig.*, the Court recognized "some merit to those arguments" that "less deference" need be given to the plaintiffs' choice of forum when the plaintiffs "do not reside in the District of Columbia." 263 F. Supp. 2d at 69. The Court denied transfer in that class action antitrust case, however, due to other factors, including that the Court was "extremely familiar with the facts of the case" and the case was soon to go to trial. *Id*. at 71.

claims and all of the defendant's counterclaims, was executed in Louisiana. Def.'s Mem. ¶¶ 5-6.[6] The purposes of the JV Agreement and apparently the other agreements at issue in the plaintiff's claims was to undertake activities in Southern Sudan or Iraq. *See* Pl.'s Opp'n at 8; Def.'s Mem. ¶ 3. Indeed, none of the activities underlying either party's claims occurred in the District, which has no connection at all to the parties or the claims. Thus, this factor tends slightly to favor transfer to Louisiana.

The remaining three private interest factors regarding the convenience of the parties and witnesses, and the ease of access to proof, are neutral or weigh in favor of transfer. The defendant's witnesses and documents relating to performance of the JV Agreement are located in the Middle District of Louisiana. Def.'s Mem. ¶ 10. The plaintiff does not dispute this fact, but rather notes that "[n]one of [its] representatives are located in Louisiana." Pl.'s Opp'n at 4 (citing Hartsuff Decl. ¶ 12). The plaintiff's relevant witnesses and evidence are scattered throughout at least five different states and four foreign countries. *Id.* at 4-5 (noting that witnesses and evidence related to the parties' dispute are located in the following places: Alexandria, Virginia; Baghdad, Iraq; Kabul, Afghanistan; China; Grove, North Carolina; London, England; Bridgeville, Pennsylvania; Chicago, Illinois, and Memphis, Tennessee). As the defendant points out, the plaintiff's argument does little to help its cause since demonstrating that its relevant evidence is outside of Louisiana does not create a "legitimate tie between the claims at issue and the District of Columbia." Def.'s Reply in Supp. Mot. ("Def.'s Reply") at 3. The fact that at least one of the parties' witnesses and evidence is located in the proposed

---

[6] While the parties dispute whether negotiations for the JV Agreement occurred in Tennessee, the plaintiff does not contest the defendant's assertion that this agreement was executed in Louisiana. *See* Def.'s Mem. ¶ 5 ("[t]he Joint Venture Agreement was executed by Arkel in Louisiana"); Def.'s Reply in Supp. Mot. ("Def.'s Reply"), Ex. 1, Decl. George Knost, President and Owner of Arkel ("Knost Decl.") ¶¶ 6-9 (stating that he was the "sole person involved in the negotiation of the [JV Agreement]" and has "no recollection of a meeting in Memphis, TN . . . to negotiate the term of the [JV Agreement]"); Pl.'s Opp'n at 2 (contending that JV Agreement was negotiated in Memphis but not addressing place of execution); Decl. Steve Hartsuff, Vice President of Sallyport, ¶ 3 (same); *see generally* Pl.'s Surreply, ECF No. 20-1.

7

transferee district and that the other parties' evidence is scattered around the world with no single convenient venue, tends to weigh in favor of transfer to the proposed transferee district.

Overall, the private interest factors weigh slightly in favor of transfer. As the defendant accurately summarizes, with regards to the private interest factors, "the District of Columbia is not [the plaintiff's] home forum, none of the events giving rise to the claims took place in the District, and none of the apparent witnesses to [the plaintiff's] claims and defenses are located in the District." *Id.* Even if the Court were to accept the plaintiff's assertion that "no private interest consideration would justify giving [the defendant] its choice of forum preference over [the plaintiff's]," Pl's Opp'n at 9, the case should still be transferred, as the public interest factors make Louisiana the more appropriate place to hear this dispute.

### B. Analysis of the Public Interest Factors

Courts typically look to three factors in evaluating the public interest: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote*, 858 F. Supp. 2d at 123 (citing *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 56 (D.D.C. 2011)). The second and third factors may be easily dispensed since: (1) neither party has addressed the relative congestion of the courts;[7] and (2) the nature of the contractual disputes at issue in this case between private parties do not raise any local interests. *See* Pl.'s Opp'n at 10. By contrast, the first factor, the

---

[7] This factor is typically determined by this Court by comparing each district's median times from filing to disposition or trial. *See Taylor v. Shinseki*, No. CV 13-1416 (JDB), 2014 WL 350261 (D.D.C. Jan. 31, 2014) (citing *Pueblo v. Nat'l Indian Gaming Comm'n,* 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010). This Court's median time from filing to disposition is 7.6 months and to trial is 38.5 months, as compared to 8.3 months and 30 months, respectively, in the Middle District of Louisiana. *See* Adm. Office of the U.S. Courts, Judicial Caseload Profile for the District of Columbia & for the Middle District of Louisiana as of September 30, 2014, *available at* http://www.uscourts.gov/Statistics/ FederalCourtManagementStatistics/district–courts–september–2014.aspx . These timing differences are miniscule and, therefore, this factor is neutral.

transferee forum's familiarity with the governing laws, tips the scale heavily in favor of Louisiana.

The first factor is particularly important in diversity cases that "implicate state law, with which federal courts are not equally familiar." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013) (collecting cases). The parties agree that the JV Agreement, which the plaintiff concedes is the basis for half of its claims, is governed by the laws of the State of Louisiana. *See* Pl.'s Opp'n at 2 ("[the JV Agreement] does, as [the defendant] points out, contain a provision providing that ['this Agreement] was to be governed by the 'laws of the United States and the State of Louisiana,'" citing Compl., Ex. A, Agreement § 5.18, ECF 1-1).[8] Thus, Louisiana law will govern the majority of the claims asserted by the parties here, including half of the plaintiff's claims and all of the defendant's counterclaims. *See* Def.'s Reply at 2 ("at least six of the eight counts raised by the parties relate to the Joint Venture Agreement, which . . . is to be governed under the laws of Louisiana.").

The Supreme Court has acknowledged the advantages in diversity actions of having federal judges who are the most familiar with the governing state law deciding legal disputes subject to state law. *See Van Dusen*, 376 U.S. at 645 ("it has long been recognized that: 'There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself,'" quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). Consequently, district courts often transfer cases to the forum with the most familiarity with the state laws applicable to the parties' dispute. *See, e.g.*, *Estate of Matthews v. Novartis Pharm. Corp.*, No. CV 07-301 (CKK), 2014 WL 6684487, at *6 (D.D.C.

---

[8] The plaintiff does not specify the law governing the agreements underlying two of its claims, other than to indicate Louisiana law is not specified. *See* Pl.'s Opp'n at 10. In any event, the plaintiff does not indicate that District of Columbia law will apply. *See generally* Pl.'s Opp'n.

Nov. 26, 2014) (transferring diversity case to Southern District of Georgia "[s]ince Georgia products liability law will likely govern" and "the Southern District of Georgia's experience interpreting Georgia products-liability law strongly favors transfer"); *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 92 (D.D.C. Jan. 31, 2014) (finding that Louisiana's familiarity with substantive state tort law, in Title VII action, weighed in favor of transferring the case to Louisiana); *Trout Unlimited*, 944 F. Supp. at 19 (transferring case to Colorado where Colorado state law may apply to the matter and "[t]he district court in Colorado is more familiar than this court with the application of Colorado law"); *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991)("[a]nother factor strongly warranting transfer is the familiarity of the Ohio District Court with the Ohio law which must be applied in this case"). Thus, the interest of justice is clearly best served by transferring the action to the Middle District of Louisiana, which is the forum that has more familiarity with the state law applicable to half of the plaintiff's claims and to the defendant's counterclaims.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that transfer to the Middle District of Louisiana is in the interests of justice and warranted under 28 U.S.C. § 1404(a). Accordingly, the defendant's motion to transfer venue is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

Date: January 26, 2015

_____  
BERYL A. HOWELL  
United States District Judge